THE STATE v. WAGNER, *Appellant.*

1.  **Murder by Poisoning.** A homicide by administering poison, with intention of mischief and for an unlawful purpose, knowing it to be dangerous to human life, although without intent to kill, is murder at common law, and under the statute murder in the first degree.

2.  **Murder:** REVERSIBLE ERROR. Under section 1654 of the Revised Statutes of 1879, a person found guilty of murder in the second degree shall be punished according to the verdict, although the evidence shows him to be guilty of murder in the first degree. In such a case the granting of an instruction for murder in the second degree is not reversible error. See *State v. Alexander*, 66 Mo. 148.

3.  **Criminal Law :** RIGHT OF ACCUSED TO MEET ADVERSE WITNESSES : WAIVER. Where the defendant in a criminal prosecution, in order to avoid a continuance, consents that a written statement presented by the prosecuting attorney as containing the testimony of absent witnesses shall be read to the jury as and for their testimony, he thereby waives his constitutional right to meet the witnesses against him face to face.

*Appeal from Jackson Criminal Court.*—HON. H. P. WHITE, Judge.

AFFIRMED.

*Haire & Kenyon* for appellant.

*D. H. McIntyre,* Attorney General, and *Wm. H. Wallace* for the State.

HOUGH, C. J.—The defendant was indicted for murder in the first degree, and was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for ten years.

He is charged in the indictment with having at divers times prior to and on the 24th day of November, 1881, willfully, deliberately, premeditatedly and of his malice aforethought, administered a certain poison called laudanum to one Norman J. Bauder, designing and intending him, the said Bauder, thereby to kill and murder, from the effects of

which said poison said Bauder died on the 24th day of November, 1881. There was testimony tending to show that the defendant administered the laudanum to deceased from time to time, not for the purpose of killing him, but for the purpose of stupifying his faculties and weakening his intellect so that he might obtain possession of certain money and property which the deceased had; and there was also testimony tending to show that the deceased was afflicted with diarrhœa, and that the laudanum was administered to him by the defendant for the purpose of checking the disease. It also appears that the defendant administered an unusually large dose to the deceased on the day of his death, from the effects of which there is testimony tending to show he died. The court instructed the jury as to the law of murder in the first degree, murder in the second degree, and manslaughter in the fourth degree, as follows:

1. If you find from the evidence that the defendant, A. J. Wagner, at the county of Jackson, in the State of Missouri, at any time previous to the filing of the indictment in this cause, intending and contriving to kill the deceased, Norman J. Bauder, did willfully, deliberately, premeditatedly and of his malice aforethought, kill said Norman J. Bauder by giving to said Bauder a quantity of poison called laudanum, or by giving said Bauder divers quantities of said poison at divers times, then you will find the defendant guilty of murder in the first degree.

2. If you find from the evidence that the defendant, A. J. Wagner, at the county of Jackson in the State of Missouri, at any time within three years next before the filing of the indictment in this cause, in pursuance of a design on his part to produce, increase or prolong such a state of stupor or sickness on the part of deceased, Norman J. Bauder, as would enable him, the defendant, to accomplish any unlawful purpose with reference to said Bauder, did willfully, premeditatedly and of his malice aforethought administer to him, the said Bauder, any quantity or quanties of a poison called laudanum, knowing that to do so

was wrong and dangerous to life, and should you further find that in consequence of such laudanum, so administered, for said purpose by defendant, the said Bauder died, then in such case, the law presumes such laudanum was administered by said Wagner with intent to kill said Bauder, and also that such killing was done with malice aforethought, and the jury must find the defendant guilty of murder in the second degree and assess his punishment at imprisonment in the State penitentiary for a term not less than ten years.

3.   If you find from the evidence that defendant brought about the death of deceased by giving him laudanum, and yet not in such a manner and with such intent as to render him guilty of murder in the first or second degree, under the foregoing instructions, yet if you find that defendant was attempting to treat deceased for some disease with which deceased was afflicted, and in such treatment carelessly and recklessly so administered laudanum to deceased, that he was guilty of culpable negligence in producing the death of deceased thereby, then you will find defendant guilty of manslaughter in the fourth degree, and assess his punishment at imprisonment in the penitentiary for two years, or by imprisonment in the county jail not less than six months, or by a fine not less than $500, or by both a fine not less than $100 and imprisonment in the county jail not less than three months.

The giving of the second instruction has been assigned as error.   The question presented for our determination by this instruction and the argument of counsel is whether, on the facts stated therein, the defendant is guilty of murder in the first or second degree.   The statute provides that " every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first

1. MURDER BY POISONING.

degree." R. S., § 1232. "All other kinds of murder at common law, not herein declared to be manslaughter, or justifiable or excusable homicide, shall be deemed murder in the second degree." R. S., § 1233. It has been repeatedly decided by this court that our statute dividing murder into two degrees is a statute of classification and not of definition, and that no homicide, therefore, can be murder either in the first or second degree which was not murder at the common law. *State v. Shock*, 68 Mo. 552; *State v. Curtis*, 70 Mo. 598; *State v. Robinson*, 73 Mo. 306. The question then arises whether, when a homicide is committed by the administration of poison without an intent to kill, but in order to accomplish some unlawful act other than the felonies specified in the statute, and the person administering the same knows it to be dangerous to life, such homicide is murder at common law. If it be murder at common law, then as the murder is by poison it is necessarily murder in the first degree. A homicide by poison is not necessarily murder at common law. Wharton on Hom., § 92. Poison may be carefully and innocently administered for a lawful purpose, and yet produce death, in which case no crime will have been committed. So, also, a homicide committed by poison heedlessly or incautiously administered for no unlawful purpose will amount at most only to manslaughter. But where poison is knowingly administered with intention of mischief, and to accomplish some unlawful purpose, if death ensue it will be murder, although death was not intended. The principles here announced find support in a remarkably clear and satisfactory opinion by Judge McKinney in the case of *Ann v. State*, 11 Hump. 159, *vide* also *State v. Wells*, 61 Iowa 100; *s. c.*, 17 Cent. L. J. 389. Under this view of the law the second instruction was erroneous. On the facts stated in this instruction, which the jury by their verdict seem to have found to be true, the defendant is guilty of murder in the first degree, a homicide by poison, which is murder at common law, being under the statute, as has been stated, murder in the first degree.

But this error of the court will not warrant a reversal of the judgment. Section 1654 of the Revised Statutes, declares that: "Upon indictment for any offense consisting of different degrees as prescribed by this law, the jury may find the accused not guilty of the offense charged in the indictment, and may find him guilty of any degree of such offense inferior to that charged in the indictment, or of an attempt to commit such offense, or any degree thereof; and any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide." This statute has been declared by this court to be a constitutional enactment, (*State v. Hopper*, 71 Mo. 425,) and the verdict of the jury, therefore, cannot be disturbed for the error committed by the court in giving the second instruction.

*2. MURDER: reversible error.*

It is further urged by the defendant's counsel that the court erred in permitting the written statement of absent witnesses, prepared by the prosecuting attorney on his application for a continuance for the State, to be read to the jury, although the defendant insisted on going to trial and consented that such statements might be used as and for the testimony of such witnesses. This assignment of error is based upon section 22 of the bill of rights, which provides that in criminal prosecutions the accused shall have the right " to meet the witnesses against him face to face," and upon the further ground that the defendant cannot waive this constitutional right. This precise question has been directly passed upon by the supreme court of Iowa in the case of the *State v. Polson*, 29 Iowa 133, under a constitutional provision similar to ours, and the right of the defendant to waive his personal privilege to be confronted by the witnesses against him is distinctly affirmed both upon principle and authority, and we approve the views there announced.

*3. CRIMINAL LAW: right of accused to meet adverse witnesses: waiver.*

Perceiving no error in the record before us which will warrant a reversal, the judgment of the criminal court of Jackson county will be affirmed. The other judges concur.